IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RBC BANK (USA),** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0038-WS-C |
| ) | |
| **HOLIDAY ISLE, LLC, et al.,** ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on the motion of plaintiff RBC Bank (USA) ("RBC") to dismiss the counterclaim filed by Holiday Isle, LLC ("Holiday Isle"). (Doc. 81). The parties have filed briefs in support of their respective positions, (Docs. 98, 112), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to dismiss is due to be granted.

## BACKGROUND

As set forth in more detail elsewhere, Holiday Isle developed a condominium project on Dauphin Island. As required by their respective contracts, each of the unit purchasers who did not provide cash earnest money produced to Holiday Isle letters of credit in the amount of 20% of the purchase price. When purchasers declined to close (as many did), Holiday Isle declared them in default and called the letters of credit. Holiday Isle deposited the proceeds of the letters of credit in an account ("the Account") it maintained with RBC. RBC was advised by various purchasers that they rather than Holiday Isle were entitled to the funds in the Account because Holiday Isle rather than they had defaulted. RBC filed this action pursuant to 28 U.S.C. § 1335 to determine the right to the funds (over $3 million) in the Account. The defendants include various unit

purchasers, Holiday Isle (which is now in bankruptcy), and RBC Real Estate Finance, Inc. ("REFI"), the current construction lender on the project.

Holiday Isle's counterclaim includes two counts. First, it alleges that, shortly before the interpleader was filed, Holiday Isle presented a $360,000 check on the Account, which RBC wrongfully dishonored. Second, it alleges that, when RBC filed the interpleader action, it converted to its own use the funds in the Account. (Doc. 64 at 4-5). RBC moves to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## DISCUSSION

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must as a threshold matter provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffices to satisfy Rule 8(a)(2). *Id.* "Stated differently, the factual allegations in a complaint must 'posses enough heft' plausibly to suggest that the pleader is entitled to relief. ... Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitlement to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557).

If, but only if, "a claim has been stated adequately [under Rule 8(a)(2)], it may be supported by showing any set of facts consistent with the complaint." *Twombly*, 550 U.S. at 563 (explaining *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). That is, "[a] motion to dismiss [for failure to state a claim] may be granted only when a defendant demonstrates

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kirwin v. Price Communications Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004) (internal quotes omitted). In making this assessment, "all facts set forth in the plaintiff's complaint are to be accepted as true ...." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotes omitted).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced. Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005), and the Court will not supply legal or analytical support the parties have declined to offer themselves.

RBC articulates two arguments in support of its motion to dismiss: (1) the counterclaim was untimely filed; and (2) the counterclaim falls outside the scope of RBC's action. The Court considers these arguments in turn.

**I. Timeliness.**

This action was filed in the Northern District of Alabama. After Holiday Isle filed for bankruptcy, it filed a motion for dismissal or change of venue. (Doc. 7). Judge Proctor granted the change of venue on December 15, 2008 but did not address the motion to dismiss. (Doc. 36). RBC argues that, pursuant to Federal Rule of Civil Procedure 12(a)(4), Holiday Isle was required to file any counterclaim on or before December 29, 2008.

Because Judge Proctor did not expressly address or deny Holiday Isle's motion to dismiss, it is unclear whether Rule 12(a)(4) was ever triggered. At any rate, the counterclaim is not untimely with or without resort to that rule, for reasons fully set forth

in the Court's order on RBC's motion to dismiss the counterclaim of the Waddell Group.

**II.  Scope of the Counterclaim.**

"[W]here a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy."  *Prudential Insurance Co. v. Hovis*, 553 F.3d 258, 265 (3rd Cir. 2009).  That is, the "failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty."  *Id.*

Holiday Isle's counterclaim falls squarely within this principle.  It alleges that the very act of interpleading Account funds constituted a conversion and that refusing to allow Holiday Isle to withdraw funds in the face of the purchasers' contrary claims constituted a wrongful dishonor.  The counterclaim proceeds from, and depends on, the express premise that "[a]ll monies in said account were the property of" Holiday Isle.  (Doc. 64, ¶ 4).  For Holiday Isle to prevail on these claims, it would necessarily have to show that RBC should have "resolve[d] the controversy" and made a "cho[ic]e between the adverse claimants," honoring Holiday Isle's claim to ownership and rejecting the purchasers' claims.  This is precisely the dilemma against which the interpleader mechanism offers protection.

Holiday Isle insists that "it maintained" the Account and that the funds in the Account are its property.  (Doc. 98 at 2 (emphasis in original)).  This merely restates Holiday Isle's claim to the funds; it does not establish the priority of Holiday Isle's right, nor does it defeat RBC's right to invoke interpleader.  *See In re: Mandalay Shores Cooperative Housing Association*, 21 F.3d 380, 383 (11th Cir. 1994) ("Banks, too, sometimes resort to interpleader in their normal course of business," including when they are "acting merely as a depositary").

Holiday Isle identifies two appellate cases allowing conversion claims to be

maintained within an interpleader action.[1] In both cases, the property allegedly converted was cattle, which the stakeholder then sold, with the net proceeds becoming the interpleaded fund. Under these circumstances, the stakeholder was not "blameless with respect to the existence of the ownership controversy," since it allegedly failed to exercise the requisite care to confirm that the consignor was authorized to deliver the cattle for sale.[2] Moreover, the converted property was the livestock, not the ultimate cash proceeds from its sale that constituted the interpleaded res. Finally, in neither case was the ability to pursue a conversion claim against the stakeholder questioned. Holiday Isle has not shown that these cases authorize it to maintain a conversion claim based on RBC's act of interpleading contested funds.

Nor could it easily do so, since the old Fifth Circuit has expressly recognized that stakeholders "ha[ve] available a procedure to settle the conflicting claims to the monies which would not involve the risk of converting them — an interpleader action ...." *United States Fidelity & Guaranty Co. v. Bass*, 619 F.2d 1057, 1074 (5th Cir. 1980). That clear language from binding precedent squarely forecloses a conversion claim based on the act of interpleading contested funds.

## CONCLUSION

For the reasons set forth above, RBC's motion to dismiss is **granted**. Holiday Isle's counterclaim against RBC is **dismissed**.

DONE and ORDERED this 14th day of September, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[1] *Dakota Livestock Co. v. Keim*, 552 F.2d 1302 (8th Cir. 1977); *Hebel v. Ebersole*, 543 F.2d 14 (7th Cir. 1976).

[2] This was explicitly the situation in *Keim*. It appears also to be the basis of the conversion claim in *Hebel*, on which *Keim* relied.