IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RBC BANK (USA), | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 09-0038-WS-C |
| | ) |
| HOLIDAY ISLE, LLC, et al., | ) |
| | ) |
|     Defendants. | ) |

### ORDER

This matter is before the Court on the motion of defendant RBC Real Estate Finance, Inc. ("REFI") to dismiss the crossclaim filed by certain defendants ("the Waddell Group"). (Doc. 93). The parties have filed briefs in support of their respective positions, (Docs. 94, 109, 120), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to dismiss is due to be granted in part and denied in part.

### BACKGROUND

Members of the Waddell Group entered separate agreements with co-defendant Holiday Isle, LLC ("Holiday Isle") to purchase a number of units in a Dauphin Island condominium project with the eponymous name of Holiday Isle. Pursuant to their respective contracts with Holiday Isle, members of the Waddell Group presented letters of credit in the amount of 20% of the purchase price. When the Waddell Group declined to close, Holiday Isle declared them in default and called the letters of credit.

Holiday Isle maintains an account ("the Account") with plaintiff RBC Bank (USA) ("RBC"), into which Holiday Isle deposited proceeds of the called letters of credit, including those of the Waddell Group. RBC filed this action pursuant to 28 U.S.C. § 1335 to determine the right to the funds in the Account. The defendants include the

members of the Waddell Group, other unit purchasers, Holiday Isle (which is now in bankruptcy), and REFI, the current construction lender on the project.

The Waddell Group filed a counterclaim against RBC, a crossclaim against REFI, and third-party claims against Regions Bank ("Regions") and Bay Title Insurance Co. ("Bay Title"). (Doc. 57). The crossclaim is not broken out separately but is found within the counterclaim. The counterclaim/crossclaim includes ten counts: (1) violations of the Alabama Uniform Condominium Act ("AUCA"); (2) conspiracy to violate the AUCA; (3) conversion; (4) wrongful call of the letters of credit; (5) unjust enrichment; (6) breach of fiduciary duty; (7) fraudulent suppression; (8) money had and received; (9) intentional interference with contractual and business relations; and (10) injurious falsehood. (*Id.* at 38-49). REFI moves to dismiss all counts of the crossclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## DISCUSSION

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must as a threshold matter provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. Thus, neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffices to satisfy Rule 8(a)(2). *Id*. "Stated differently, the factual allegations in a complaint must 'posses enough heft' plausibly to suggest that the pleader is entitled to relief. ... Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitlement to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557).

If, but only if, "a claim has been stated adequately [under Rule 8(a)(2)], it may be supported by showing any set of facts consistent with the complaint." *Twombly*, 550 U.S. at 563 (explaining *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  That is, "[a] motion to dismiss [for failure to state a claim] may be granted only when a defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kirwin v. Price Communications Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004) (internal quotes omitted).  In making this assessment, "all facts set forth in the plaintiff's complaint are to be accepted as true ...." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotes omitted).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced.  Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005), and the Court will not supply legal or analytical support the parties have declined to offer themselves.

REFI argues that: (1) the crossclaim alleges wrongdoing by RBC, Holiday Isle, Regions and Bay Title, but not by REFI; and (2) the crossclaim discloses that the alleged wrongful conduct occurred before REFI existed.

Count Four alleges that "RBC ... wrongfully call[ed]" the letters of credit.  (Doc. 57, ¶ 83).  Count Seven alleges that "RBC, AmSouth/Regions and Bay Title ... concealed material facts which they had a legal duty to disclose to the Waddell Plaintiffs." (*Id.*, ¶ 89).  Count Ten alleges that "RBC ... caused Holiday Isle, LLC to falsely represent to the lenders which issued the LOCs that the Waddell Plaintiffs were in breach" of their contracts with Holiday Isle.  (*Id.*, ¶ 96).  The Waddell Group concede that these counts "are [not] factually applicable to" REFI.  (Doc. 109 at 1 n.1).

Other counts are similarly devoid of any allegation of wrongdoing by REFI. Count One alleges that "the Developers" (Holiday Isle and certain others), RBC and Bay Title ignored statutory escrow requirements and that RBC engaged in certain other misconduct. (Doc. 57, ¶¶ 74-75).[1] Count Two alleges that "AmSouth/Regions and RBC combined and conspired with the Developers and Bay Title" to violate the AUCA. (*Id*., ¶ 78).[2] Count Six alleges that "RBC, separately or in concert with the Developers and Bay Title," prevented the letters of credit from being placed with an escrow agent, that "RBC" caused the proceeds of the called letters of credit to be deposited in the Account, and that "RBC assumed a fiduciary relationship to the Waddell Plaintiffs ...." (*Id*., ¶ 87). Count Eight alleges that "RBC exercised control over money which, in equity and good conscience, was not its property ...." (*Id*., ¶ 92). Count Nine alleges that "RBC, with Bay Title's complicity, tortiously and intentionally interfered with the Waddell Plaintiffs' contracts with the Developers ...." (*Id*., ¶ 94).

Count Three alleges that "[t]he counter claim Defendants' unilateral decision to take the Waddell Plaintiffs' earnest money deposits and cause those deposits to be placed [in the Account] constitutes a conversion of the Waddell Plaintiffs' property." (Doc. 57, ¶ 81). This count is phrased broadly enough to encompass an allegation that REFI converted the proceeds of the letters of credit by participating in the decision to take the proceeds and place them in the Account. However, according to the crossclaim itself, the

---

[1]Count One alleges that RBC's wrongful conduct allegedly subjected the deposits to liens by RBC and/or REFI. (*Id*., ¶ 75). This is not an allegation of wrongdoing by REFI.

The Waddell Group assert that Count One alleges "that the party in control of the deposit funds at any given time" owed them duties under the AUCA, (Doc. 109 at 4), but it plainly does not encompass REFI.

[2]The Waddell Group assert that Count Two alleges that "REFI's acceptance of the 'Assignment' of all rights in Holiday Isle's 'assets,' including the deposit funds, was the final step in a scheme to deprive the purchasers of their deposits ...." (Doc. 109 at 5). It plainly does not allege REFI's participation in any such scheme.

deposits were placed in the Account in August and September 2007, (*id.*, ¶ 49), while REFI was not incorporated until April 24, 2008. (*Id.*, ¶ 59). Because the Court is required to accept the crossclaim's allegations as true, it is not possible for the Waddell Group to prove that REFI participated in the decision to place the proceeds in the Account.

The Waddell Group note that the crossclaim alleges that Holiday Isle, with RBC's knowledge and assent, withdrew over $500,000 from the Account in May 2008. (Doc. 57, ¶¶ 63-64). Since this was after REFI came into existence, the Waddell Group suspects REFI could have been involved in these withdrawals. (Doc. 109 at 3-4). Perhaps so, but the crossclaim does not allege such involvement. Even Count Three, which does allege wrongdoing by REFI, limits that wrongdoing to the August 2007 decision to place the proceeds of the called letters of credit in the Account, not any later disbursement of such funds.

The Waddell Group suggest weakly that REFI could be liable as an "accessory after the fact." (Doc. 109 at 2, 12). Assuming without deciding that this principle of criminal law has any applicability in the civil context, Count Three alleges no wrongdoing by REFI "after the fact" of placing the proceeds in the Account.

The Waddell Group argue that there are "disputed issues of fact" as to whether REFI knew of and participated in the alleged wrongful conduct, and they repeatedly insist they are entitled to discovery on these matters before being subjected to dismissal under Rule 12(b)(6). (Doc. 109 at 2, 4-6). The Waddell Group are placing the cart before the horse. A plaintiff has no right to pursue discovery in support of its allegations before it has articulated those allegations in its pleading. As noted above, the Waddell Group have not alleged wrongdoing by REFI with respect to Counts One, Two, Six, Eight and Nine, and that is the end of the 12(b)(6) inquiry.[3] As to Count Three, the Waddell Group have

---

[3] Had the Waddell Group made such allegations, the motion to dismiss would still be ripe. The propriety of dismissal for failure to state a claim is based on the allegations of the pleading, not on the facts presently available to support those allegations. "The issue is not whether [the plaintiffs] may ultimately prevail ..., but whether the allegations

alleged wrongdoing by REFI, but their own allegations negate their ability to prove such wrongdoing, and that likewise is the end of the matter.

Liability can be based either on the defendant's own wrongdoing or on its responsibility for the wrongdoing of another. The Waddell Group assert that REFI is the "instrumentality" and/or "alter ego" of RBC and that it therefore partakes of RBC's culpability, and they repeat their argument that dismissal is premature before they have had the opportunity to flesh out these assertions in discovery. (Doc. 109 at 2-3, 12-13).

Just as the crossclaim fails to allege wrongdoing by REFI, it fails to allege REFI's responsibility for RBC's wrongdoing. The crossclaim alleges that, on April 29, 2008, RBC (the previous construction lender) assigned its rights and interests in the construction loan documents, and in Holiday Isle's assets, to REFI. (Doc. 57, ¶ 59). REFI is described as "a wholly-owned subsidiary of RBC created to manage certain of RBC's 'impaired' builder loans." (*Id*., ¶ 2). The crossclaim further alleges that RBC and REFI share the same physical address and that REFI did not give consideration for the assignment. (*Id*.). The crossclaim alleges that, following the assignment, RBC noted REFI as a secured party on the Account, which allegedly created a lien or security interest in the Account funds. The crossclaim concludes that, through this "artifice," "RBC is, in reality and effect, advancing its own baseless claim to the deposited funds." (*Id*., ¶ 61). There is no allegation that REFI is RBC's alter ego, that REFI is RBC's instrumentality, or that REFI is vicariously liable for RBC's wrongdoing. While the allegations of the crossclam might suggest that REFI has no right to the interpleaded funds, they do not suggest that REFI, after it came into existence, became retroactively liable for torts committed by RBC before REFI existed. As discussed above, the absence of discovery is immaterial to resolution of this motion.

Only Count Five remains for consideration. That count alleges that "RBC and/or

---

are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Jackam v. Hospital Corporation of America*, 800 F.2d 1577, 1579-80 (11th Cir. 1986).

RBC REFI" took dominion over the proceeds as collateral on the construction loan and were thereby unjustly enriched.  Because REFI came into existence in April 2008, it could thereafter have been unjustly enriched by taking "dominion" over the funds in the Account.[4]  Count Five therefore is not subject to REFI's objections that the crossclaim alleges no wrongdoing by REFI and alleges only wrongdoing preceding REFI's existence.

REFI replies that it cannot have been unjustly enriched, because it has never possessed the funds in the Account and that, in any event, unjust enrichment is only a defense to REFI's claim to the interpleaded funds, not a basis for affirmative relief.  (Doc. 120 at 4).  These are not implausible arguments, but they were not raised in REFI's initial brief, and they are not properly raised for the first time in a reply brief.  *Mariano v. Potter*, 2006 WL 907772 at *3 & n.6 (S.D. Ala. 2006).

## CONCLUSION

For the reasons set forth above, REFI's motion to dismiss is **granted** with respect to Counts One, Two, Three, Four, Six, Seven, Eight, Nine and Ten and **denied** with respect to Count Five.

DONE and ORDERED this 14th day of September, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[4]The allegation that REFI took dominion is not, as REFI argues, (Doc. 94 at 3-4), limited to the moment the funds were placed in the Account.