# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RBC BANK (USA), | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 09-0038-WS-C |
| | ) |
| HOLIDAY ISLE, LLC, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion to strike the jury demand made by the Murray Group of defendants/counterclaimants. (Doc. 208). The parties has submitted briefs in support of their respective positions, (Docs. 223, 231), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

As set forth in other Court orders, the members of the Murray Group[1] are among a larger number of purchasers of condominiums in a project developed by defendant Holiday Isle, LLC ("Holiday Isle"). Pursuant to their contracts, the Murray Group and others presented letters of credit representing 20% of the purchase price of their units. When they failed to close, Holiday Isle declared them in default, presented the letters of credit to the issuing institutions, and deposited proceeds with the plaintiff. Many of the purchasers challenged this action and initiated lawsuits and/or arbitration. In October

---

[1]The Murray Group as presently composed is an amalgam of two smaller groups. For convenience, when referring to one of these components the Court will employ the terms "Murray A" and "Murray B."

2008, the plaintiff filed this interpleader action, depositing with the Clerk the balance in the account (over $3 million) in which the letter of credit proceeds had been deposited.

In March 2009, Murray A filed an answer and counterclaim/crossclaim. (Doc. 58). As noted by the plaintiff, the counterclaim alleged that the plaintiff had deposited the proceeds of their letters of credit with the Court, alleged they were entitled to return of the deposits, and demanded judgment against the plaintiff (and a co-defendant) "in the aforesaid interpled fund amounts." (*Id*. at 4). As noted by the plaintiff, among the defenses asserted was that the plaintiff "is not a disinterested stakeholder" and "is without clean hands," and on this basis " should not be released from further liability." (*Id*. at 3). The answer and counterclaim/crossclaim contains no jury demand.

In April 2009, Murray A filed an answer to the crossclaim filed against them by another party, RBC Real Estate Finance, Inc. ("REFI"), along with a crossclaim against REFI. (Doc. 70). As noted by the plaintiff, the crossclaim alleges that the plaintiff took a purported assignment of an account containing the proceeds of the Murray A letters of credit and alleged that "[t]he amounts in said interpled account are properly due and owing the Defendants in the amounts of each Defendants' letter of credit, plus interest, and attorneys fees." (*Id*. at 2). The ad damnum clause demands judgment "in the aforesaid interpled fund amounts." (*Id*.).[2] The answer and crossclaim contains no jury demand.

In May 2009, Murray B filed an answer and counterclaim. (Doc. 86). As noted by the plaintiff, the allegations therein are not substantively different from those asserted by Murray A. The answer and counterclaim contains no jury demand.

In November 2009, the Murray Group filed a motion to amend their answer to

---

[2]For reasons unknown, the ad damnum clause demands judgment against the plaintiff as well as against crossclaim defendant REFI.

assert a counterclaim. (Doc. 169).³ The attached proposed first amended answer and counterclaim alleges that the plaintiff: required Holiday Isle to call the letters of credit and deposit them in an account with the plaintiff; allowed or required Holiday Isle to access the account, withdraw funds, and use such funds for the benefit of the plaintiff; took dominion and possession of the Murray Group's property to their detriment; held the proceeds of their letters of credit in constructive trust and violated that trust; and was negligent in its handling of the proceeds of the letters of credit by maintaining control of the proceeds rather than having them placed with the escrow agent. (*Id.*, Exhibit C at 2). The proposed counterclaim demands judgment against the plaintiff for unspecified compensatory and punitive damages. (*Id.*). The proposed amended answer and counterclaim does not include a jury demand.

On December 4, the Court granted the Murray Group's motion. (Doc. 190). Five days later, they filed their amended answer and counterclaim. (Doc. 195). The document is substantively identical to that presented with their motion to amend, except that it adds an express demand for trial by jury. The demand does not specify whether it applies only to the counterclaim or extends to the plaintiff's complaint in interpleader. (*Id.* at 5).

## DISCUSSION

The right to trial by jury, though precious, can be waived. In particular, a party desiring a jury trial as to any particular issue is required to file and serve a demand for jury trial within two weeks "after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b). Failure to make a timely demand results in a waiver. *Id.* 38(d); *accord LaMarca v. Turner*, 995 F.2d 1526, 1544 (11ᵗʰ Cir. 1993). However, "[s]uch waivers apply only to the issues raised by the pleadings; subsequent amendments to the pleadings can raise 'new issues' for which the right to a jury remains." *Id.*

---

³The counterclaims made part of the original answers had been dismissed for failure to state a claim. (Docs. 149, 150).

-3-

The plaintiff asserts there is no new issue raised by the counterclaim because it "relies on the same nucleus of facts as the interpleader action" and raises no "new legal theories or issues." (Doc. 208 at 6). In particular, the plaintiff notes that the original answers allege that the plaintiff "should not be discharged from further liability nor reimbursed its attorneys fees" because it "is not a disinterested stakeholder" and "is without clean hands." (Doc. 58 at 2; Doc. 86 at 2).

"The term 'new issues' has been interpreted to mean new issues of fact and not new theories of recovery." *Guajardo v. Estelle*, 580 F.2d 748, 753 (5th Cir. 1978); *accord Mega Life and Health Insurance Co. v. Pieniozek*, 585 F.3d 1399, 1404 (11th Cir. 2009). "New facts that merely clarify the same general issues raised in the original complaint do not create new issues of fact upon which to assert a jury demand." *LaMarca*, 995 F.2d at 1545 (internal quotes omitted). "The underlying facts and basic legal theory [must be] changed by the amendments in order to create new issues." *Id*. (internal quotes omitted).

The Court agrees with the plaintiff that the Murray Group's counterclaim does not raise new issues under this test. Murray A and Murray B both asserted in their respective answers and counterclaims that the plaintiff is not a disinterested stakeholder and does not have clean hands, and they did so for the express purpose of leaving the plaintiff exposed to personal liability. The allegations of their counterclaim "merely clarify" the issue raised in their original answers. The Murray Group insist the allegations in the counterclaim do not arise out of the same facts as those underpinning the allegations of their answers, but they provide no explanation that could allow the Court to reach the same conclusion.

Because the Murray Group raised the issue of the plaintiff's misconduct in their answers and not in their counterclaims, their waiver was complete two weeks after those documents were filed. *See In re: Texas General Petroleum Corp.*, 52 F.3d 1330, 1339 (5th Cir. 1995) ("The last pleading in Rule 38 usually means an answer or a reply to a counterclaim."); see also Fed. R. Civ. P. 7(a) (listing the pleadings recognized by the

Rules). Once waiver has occurred, "[a]mendments not introducing new issues do not renew a party's right to demand a jury trial." *Pieniozek*, 585 F.3d at 1404; *accord Guajardo*, 580 F.2d at 752-53 ("A complaint 'raises an issue' only once within Rule 38(b)'s meaning — when it introduces it for the first time."). Thus, the Murray Group's filing of an amended answer and counterclaim did not (since it did not raise new issues) revive their right to demand a jury trial.

Despite the Murray Group's waiver under Rule 38(d), they may yet receive a jury trial under Rule 39(b). The plaintiff argues the Court should not grant a jury trial because the relevant factors identified in *Sullivan v. School Board*, 773 F.2d 1182 (11th Cir. 1985), do not support such relief. (Doc. 208 at 8-9). The *Sullivan* Court relied on *Parrott v. Wilson*, 707 F.2d 1262 (11th Cir. 1983), in which it was said that, "[i]n this circuit, the general rule governing belated jury requests under Rule 39(b) is that the trial court should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Id.* at 1267 (internal quotes omitted). "The district courts have broad discretion when considering Rule 39(b) motions and often freely grant such motions after considering (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial." *Id.*[4]

The counterclaim includes a number of allegations but only a single claim of

---

[4]Although the Murray Group has not filed a formal motion under Rule 39(b), they have made a "similar manifestation of that party's desire to have a jury trial." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2334 at 300-01 (3rd ed. 2008). The plaintiff concedes that the jury demand included in the amended answer and counterclaim implicates Rule 39(b) and the *Parrott* factors. (Doc. 208 at 8-9). Accordingly, the Court construes the Murray Group's filings as incorporating an implied motion for jury trial.

negligence,[5] and it is difficult to imagine how such a claim is better tried to the Court than to a jury. The plaintiff asserts that trying a negligence claim to a jury would "only complicate" trial, because it would lengthen trial, require qualification of a jury, and confuse the issues. (Doc. 208 at 9). The Court does not expect a jury to prolong trial, and it sees no other likely complication flowing from a jury trial on the Murray Group's counterclaim. The Waddell Group, the Dragos, and Bay Title Insurance Company all have counterclaims and/or crossclaims that will be tried to a jury, so trying the Murray Group's counterclaim to a jury cannot create any complication that does not already exist. Indeed, the plaintiff admits that "this matter *is* complicated as is." (Doc. 231 at 5 (emphasis in original)). Nor has the plaintiff supported its implicit premise that an issue is not suited for jury decision if it is complicated.

Allowing the Murray Group a jury trial will not disrupt the Court's schedule, and the plaintiff does not suggest that it will disrupt its own. The plaintiff does declare that it will be prejudiced by allowing a jury trial because it "relied on" the Murray Group's past failure to demand a jury. (Doc. 208 at 9). It is unclear how the plaintiff could have relied on a failure to demand a jury trial as to a counterclaim that had yet to be articulated but, in any event, the Court is unpersuaded that any true prejudice exists, since the plaintiff can identify nothing it would have done differently had a jury demand come prior to the counterclaim. The Court notes that the amended answer and counterclaim were filed almost four months before the discovery deadline and over seven months before the final pretrial conference, making it unlikely that the plaintiff's plans were set in stone.

The length of delay extends from late March to early December, but the case has developed slowly, with the many parties (including the plaintiff) still filing responsive pleadings in late September. (Docs. 158-60). Indeed, there was no scheduling order in

---

[5]While the counterclaim alleges that the plaintiff held the Murray Group's funds in a constructive trust, "a constructive trust is an equitable remedy," not a cause of action. *Radenhausen v. Doss*, 819 So. 2d 616, 620 (Ala. 2001).

place until late September. (Doc. 157). The Murray Group offers no explanation for its failure to demand a jury trial in their original answers, but the fact that the issue as to which a jury could have been demanded was embedded, not in a claim for relief but in a statement of defenses, would seem to make the omission less egregious. At any rate, the plaintiff makes no argument as to either of these factors, confirming the Court's disinclination to weigh them heavily.

In sum, finding no "strong and compelling reasons to the contrary," the Court exercises its "broad discretion" in favor of allowing the Murray Group a jury trial on their counterclaim.

Relief under Rule 39(b) allows trial by jury only "on any issue for which a jury might have been demanded." To the extent the counterclaim rests on the existence of a constructive trust, such an entity is a creature of equity, *e.g.*, *Radenhausen*, 819 So. 2d at 620, and "[t]here is no right to a jury trial ... when the plaintiffs seek purely equitable relief ...." *CBS Broadcasting, Inc. v. EchoStar Communications Corp.*, 450 F.3d 505, 518 n.25 (11th Cir. 2006). The plaintiff argues the Murray Group cannot receive a jury trial with respect to a constructive trust, (Doc. 208 at 9-10), and the Murray Group do not respond. The Court concurs with the plaintiff.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion to strike jury demand is **granted** with respect to the interpleader complaint. With respect to the counterclaim, the motion is **granted** as to any assertion of a constructive trust and is otherwise **denied**. The Murray Group's implied motion for jury trial is **granted**.

DONE and ORDERED this 4th day of February, 2010.

s/ WILLIAM H. STEELE<br>UNITED STATES DISTRICT JUDGE